# UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| RONALD FUCCI, | 1:10-cv-00315-AWI-SMS (HC) |
| Petitioner, | FINDINGS AND RECOMMENDATION REGARDING PETITION FOR WRIT OF HABEAS CORPUS |
| v. | [Doc. 1] |
| KEN CLARK, | |
| Respondent. | |

Petitioner is a state prisoner proceeding pro se with a petition for writ of habeas corpus pursuant to 28 U.S.C. § 2254.

## BACKGROUND

Petitioner is currently in the custody of the California Department of Corrections and Rehabilitation following his conviction of first degree murder. Petitioner is serving a sentence of twenty-five years to life.

In the instant petition, Petitioner does not challenge the validity of his conviction; rather, he contends that the Board of Parole Hearings' (Board) 2008 decision finding him unsuitable for release was not supported by some evidence that he presents a danger to society.

In 2009, Petitioner filed a petition for writ of habeas corpus in the Fresno County Superior Court challenging the Board's July 21, 2008 decision finding him unsuitable for release. The superior court denied the petition.

1

1    Petitioner then filed a petition in the California Court of Appeal, Fifth Appellate District.

2    The appellate court denied the petition.

3    Petitioner then filed a habeas corpus petition in the California Supreme Court.  The

4    petition was denied without comment or citation.

5    Petitioner filed the instant petition for writ of habeas corpus on February 23, 1010.

6    Respondent filed an answer to the petition on October 12, 2010, and Petitioner filed a traverse on

7    October 25, 2010.

8                                    STATEMENT OF FACTS[1]

9    On December 3, 1987, William Prickett and David Kangas, were drinking beer at

10   Prickett's home.  Kangas told Prickett that victim, Timothy Kachuck, owed Kangas $30 and

11   Kangas intended to go to Kachuck's residence to collect the money or take a coffee table from

12   his residence.  While at Prickett's residence, Kangas telephoned Petitioner.  Petitioner had been

13   living with Kangas and his mother Silvia Kangas.

14   Prickett and Kangas picked up Petitioner from Kangas's residence.  Kangas and Fucci

15   talked amongst themselves about the money Kachuck owed and how they would collect it or take

16   property from his residence.  All three men drove to Kachuck's residence.  When they arrived at

17   the victim's residence, they told the victim they would obtain some methamphetamine for him.

18   The three left the residence on the pretense of obtaining the crank.  The three returned to

19   Prickett's residence and put some "cutter" into a "bindle" to be given to Kachuck in lieu of

20   crank.  While at Prickett's residence, they also obtained a pair of handcuffs and gray duct tape.

21   The three then returned to the victim's residence.

22   Kachuck lived with his parents who were out of town at the time.  The three men returned

23   to the victim's residence with beer and the "bunk crank."  The victim allowed them to enter the

24   residence.

25   Kachuck was given the "bunk crank" and started to walk toward the bathroom.  An

26   argument ensued between Petitioner and the victim.  Petitioner slapped the victim several times

27

28
          [1] This information is taken from the Probation Officer's Report.  (Ex. 1, attachment.)

1  and a wrestling match ensued, whereby the victim fell to the ground.  Kangas then instructed

2  Prickett to accompany him to a bedroom.  Kangas began to go through the personal belongings

3  looking for property he planned to take.  Kangas then entered a different room into an attic area

4  and began removing chain saws.  At that point Prickett left the residence, while Kangas and

5  Petitioner remained in the room.  Approximately two hours later, Prickett received a phone call

6  from Kangas who asked Prickett to return to the residence to give him a ride.  Prickett returned to

7  the victim's residence and discovered that a majority of the property had been removed.  Prickett

8  assisted Kangas in placing the property into his vehicle and drove Kangas to a location where

9  some of the property was left.  During the ride, Kangas told Prickett that Kachuck was dead and

10  that Petitioner killed him.  Kangas also told him that Petitioner hit the victim in the head with a

11  frying pan.  Prickett was directed to transport Kangas to a place where he was left, and then

12  Prickett returned home.

13      Investigators discovered that the victim had his hands tied behind his back with gray duct

14  tape.  The victim's lower legs, knees, and waist had also been wrapped with duct tape.  The

15  autopsy report concluded the victim died of suffocation.  The victim's mouth and nose had been

16  taped with at least twelve wraps of duct tape, which was done in such a way to totally seal his

17  mouth and nostrils.  The doctor also observed evidence of trauma to the eyes, face, head, and

18  back.

19      Several stolen items were recovered from the home of David Williams who told officers

20  that Petitioner had stored it at his residence while he was residing there.

21                                    DISCUSSION

22  I.      Standard of Review

23      On April 24, 1996, Congress enacted the Antiterrorism and Effective Death Penalty Act

24  of 1996 ("AEDPA"), which applies to all petitions for writ of habeas corpus filed after its

25  enactment.  Lindh v. Murphy, 521 U.S. 320 (1997), *cert. denied,* 522 U.S. 1008 (1997); Jeffries

26  v. Wood, 114 F.3d 1484, 1499 (9th Cir. 1997), *quoting* Drinkard v. Johnson, 97 F.3d 751, 769

27  (5th Cir.1996), *cert. denied,* 520 U.S. 1107 (1997), *overruled on other grounds by* Lindh v.

28  Murphy, 521 U.S. 320 (1997) (holding AEDPA only applicable to cases filed after statute's

1  enactment).  The instant petition was filed after the enactment of the AEDPA; thus, it is governed

2  by its provisions.

3       Petitioner is in custody of the California Department of Corrections and Rehabilitation

4  pursuant to a state court judgment.  Even though Petitioner is not challenging the underlying state

5  court conviction, 28 U.S.C. § 2254 remains the exclusive vehicle for his habeas petition because

6  he meets the threshold requirement of being in custody pursuant to a state court judgment. Sass

7  v. California Board of Prison Terms, 461 F.3d 1123, 1126-1127 (9th Cir.2006), *citing* White v.

8  Lambert, 370 F.3d 1002, 1006 (9th Cir.2004) ("Section 2254 'is the exclusive vehicle for a

9  habeas petition by a state prisoner in custody pursuant to a state court judgment, even when the

10  petition is not challenging [her] underlying state court conviction.'").

11       The instant petition is reviewed under the provisions of the Antiterrorism and Effective

12  Death Penalty Act which became effective on April 24, 1996.  Lockyer v. Andrade,  538 U.S. 63,

13  70 (2003).  Under the AEDPA, an application for habeas corpus will not be granted unless the

14  adjudication of the claim "resulted in a decision that was contrary to, or involved an

15  unreasonable application of, clearly established Federal law, as determined by the Supreme Court

16  of the United States" or "resulted in a decision that was based on an unreasonable determination

17  of the facts in light of the evidence presented in the State Court proceeding." 28 U.S.C.

18  § 2254(d); see Lockyer, 538 U.S. at 70-71;Williams, 529 U.S. at 413.

19       "[A] federal court may not issue the writ simply because the court concludes in its

20  independent judgment that the relevant state court decision applied clearly established federal

21  law erroneously or incorrectly.  Rather, that application must also be unreasonable." Id. at 411.

22  A federal habeas court making the "unreasonable application" inquiry should ask whether the

23  state court's application of clearly established federal law was "objectively unreasonable." Id. at

24  409.

25       Petitioner has the burden of establishing that the decision of the state court is contrary to

26  or involved an unreasonable application of United States Supreme Court precedent. Baylor v.

27  Estelle, 94 F.3d 1321, 1325 (9th Cir. 1996).  Although only Supreme Court law is binding on the

28  states, Ninth Circuit precedent remains relevant persuasive authority in determining whether a

4

1    ///

2    state court decision is objectively unreasonable.  See Clark v. Murphy, 331 F.3d 1062, 1069 (9th

3    Cir.2003); Duhaime v. Ducharme, 200 F.3d 597, 600-01 (9th Cir.1999).

4    II.       Review of Petition

5            There is no independent right to parole under the United States Constitution; rather, the

6    right exists and is created by the substantive state law which defines the parole scheme.  Hayward

7    v. Marshall, 603 F.3d 546, 559, 561 (9th Cir. 2010) (en banc) (citing Bd. of Pardons v. Allen,

8    482 U.S. 369, 371 (1987); Pearson v. Muntz, 606 F.3d 606, 609 (9th Cir. 2010) (citing

9    Wilkinson v. Austin, 545 U.S. 209, 221, 125 S.Ct. 2384, 162 L.Ed.2d 174 (2005)); Cooke v.

10   Solis, 606 F.3d 1206, 1213 (9th Cir. 2010).  "[D]espite the necessarily subjective and predictive

11   nature of the parole-release decision, state statutes may create liberty interests in parole release

12   that are entitled to protection under the Due Process Clause."  Bd. of Pardons v. Allen, 482 U.S.

13   at 371.

14           In California, the Board of Parole Hearings' determination of whether an inmate is

15   suitable for parole is controlled by the following regulations:

16              (a) General. The panel shall first determine whether the life prisoner is suitable for
                release on parole. Regardless of the length of time served, a life prisoner shall be found
17              unsuitable for a denied parole if in the judgment of the panel the prisoner will pose an
                unreasonable risk of danger to society if released from prison.
18
                (b) Information Considered. All relevant, reliable information available to the
19              panel shall be considered in determining suitability for parole. Such information shall
                include the circumstances of the prisoner's social history; past and present mental state;
20              past criminal history, including involvement in other criminal misconduct which is
                reliably documented; the base and other commitment offenses, including behavior before,
21              during and after the crime; past and present attitude toward the crime; any conditions of
                treatment or control, including the use of special conditions under which the prisoner may
22              safely be released to the community; and any other information which bears on the
                prisoner's suitability for release. Circumstances which taken alone may not firmly
23              establish unsuitability for parole may contribute to a pattern which results in a finding of
                unsuitability.
24

25   Cal. Code Regs. tit. 15, §§ 2402(a) and (b).  Section 2402(c) sets forth circumstances tending to

26   demonstrate unsuitability for release.  "Circumstances tending to indicate unsuitability include:

27              (1) Commitment Offense.  The prisoner committed the offense in an especially heinous,
                atrocious or cruel manner.  The factors to be considered include:
28

5

1        (A) Multiple victims were attacked, injured or killed in the same or separate
    incidents.

2        (B) The offense was carried out in a dispassionate and calculated manner,
    such as an execution-style murder.

3        (C) The victim was abused, defiled or mutilated during or after the
offense.

4        (D) The offense was carried out in a manner which demonstrates an
    exceptionally callous disregard for human suffering.

5        (E) The motive for the crime is inexplicable or very trivial in relation to
    the offense.

6

7    (2) Previous Record of Violence.  The prisoner on previous occasions inflicted or
attempted to inflict serious injury on a victim, particularly if the prisoner
demonstrated serious assaultive behavior at an early age.

8

9    (3) Unstable Social History.  The prisoner has a history of unstable or tumultuous
relationships with others.’

10   (4) Sadistic Sexual Offenses.  The prisoner has previously sexually assaulted
another in a manner calculated to inflict unusual pain or fear upon the victim.

11

12   (5) Psychological Factors.  The prisoner has a lengthy history of severe mental
problems related to the offense.

13   (6) Institutional Behavior.  The prisoner has engaged in serious misconduct in
prison or jail.

14

15   Cal. Code Regs. tit. 15, § 2402(c)(1)(A)-(E),(2)-(9).

16   Section 2402(d) sets forth the circumstances tending to show suitability which include:

17

18   (1) No Juvenile Record.  The prisoner does not have a record of assaulting others as a
juvenile or committing crimes with a potential of personal harm to victims.

19   (2) Stable Social History.  The prisoner has experienced reasonably stable relationships
with others.

20

21   (3) Signs of Remorse.  The prisoner performed acts which tend to indicate the presence of
remorse, such as attempting to repair the damage, seeking help for or relieving suffering
of the victim, or indicating that he understands the nature and magnitude of the offense.

22

23   (4) Motivation for Crime.  The prisoner committed his crime as a result of significant
stress in his life, especially if the stress has built over a long period of time.

24   (5) Battered Woman Syndrome.  At the time of the commission of the crime, the prisoner
suffered from Battered Woman Syndrome, as defined in section 2000(b), and it appears

25   the criminal behavior was the result of that victimization.

26   (6) Lack of Criminal History.  The prisoner lacks any significant history of violent crime.

27   (7) Age.  The prisoner’s present age reduces the probability of recidivism.

28   (8) Understanding and Plans for Future.  The prisoner has made realistic plans for release

1    or has developed marketable skills that can be put to use upon release.

2    (9) Institutional Behavior.  Institutional activities indicate an enhanced ability to function
     within the law upon release.

3    Cal. Code Regs. tit. 15, § 2402(d)(1)-(9).

4
5    The California parole scheme entitles the prisoner to a parole hearing and various

     procedural guarantees and rights before, at, and after the hearing.  Cal. Penal Code § 3041.5.  If
6
     denied parole, the prisoner is entitled to subsequent hearings at intervals set by statute.  Id.  In
7
     addition, if the Board or Governor find the prisoner unsuitable for release, the prisoner is entitled
8
     to a written explanation. Cal. Penal Code §§ 3041.2, 3041.5.  The denial of parole must also be
9
     supported by "some evidence," but review of the Board's or Governor's decision is extremely
10
     deferential.  In re Rosenkrantz, 29 Cal.4th 616, 128 Cal.Rptr.3d 104, 59 P.3d 174, 210 (2002).
11
12   Because California's statutory parole scheme guarantees that prisoners will not be denied

     parole absent some evidence of present dangerousness, the Ninth Circuit Court of Appeals
13
     recently held California law creates a liberty interest in parole that may be enforced under the
14
     Due Process Clause.  Hayward v. Marshall, 602 F.3d at 561-563; Pearson v. Muntz, 606 F.3d at
15
     609.  Therefore, under 28 U.S.C. § 2254, this Court's ultimate determination is whether the state
16
     court's application of the some evidence rule was unreasonable or was based on an unreasonable
17
     determination of the facts in light of the evidence.  Hayward v. Marshall. 603 F.3d at 563;
18
     Pearson v. Muntz, 606 F.3d at 608.
19
20   The applicable California standard "is whether some evidence supports the *decision* of

     the Board or the Governor that the inmate constitutes a current threat to public safety, and not
21
     merely whether some evidence confirms the existence of certain factual findings."  In re
22
     Lawrence, 44 Cal.4th 1181, 1212 (2008) (emphasis in original and citations omitted).  As to the
23
     circumstances of the commitment offense, the Lawrence Court concluded that
24
25            although the Board and the Governor may rely upon the aggravated circumstances
              of the commitment offense as a basis for a decision denying parole, the aggravated
              nature of the crime does not in and of itself provide some evidence of current
26            dangerousness to the public unless the record also establishes that something in
              the prisoner's pre- or post-incarceration history, or his or her current demeanor
27            and mental state, indicates that the implications regarding the prisoner's
              dangerousness that derive from his or her commission of the commitment offense
28            remain probative to the statutory determination of a continuing threat to public

                                                    7

1    safety.

2    Id. at 1214.

3    ///

4

5    In addition, "the circumstances of the commitment offense (or any of the other factors

6    related to unsuitability) establish unsuitability if, and only if, those circumstances are probative to

7    the determination that a prisoner remains a danger to the public.  It is not the existence or

8    nonexistence of suitability or unsuitability factors that forms the crux of the parole decision; the

9    significant circumstance is how those factors interrelate to support a conclusion of current

10   dangerousness to the public."  In re Lawrence, 44 Cal.4th at 1212.

11        "In sum, a reviewing court must consider 'whether the identified facts are *probative* to the

12   central issue of *current* dangerousness when considered in light of the full record before the

13   Board or the Governor.'"  Cooke v. Solis, 606 F.3d at 1214 (emphasis in original) (citing

14   Hayward v. Marshall, 603 F.3d at 560).

15        A.      Last Reasoned State Court Decision

16        The Fresno County Superior Court issued the last reasoned decision denying the petition

17   stating the following:

18        Having read and considered the petition for writ of habeas corpus filed on February 2,

19   2009, the court hereby finds that petitioner has failed to state a prima facie case for relief.

20           Petitioner challenges the Board of Parole Hearing's denial of his parole,
     contending that there is no evidence to show that he continues to present a current
21   danger to society based on the circumstances of his commitment offense. (*In re
     Lawrence* (2008) 44 Cal.4th 1181, 1221.)

22           In *Lawrence*, the California Supreme Court held that, "... because the core
     statutory determination entrusted to the Board and the Governor is whether the
23   inmate poses a current threat to public safety, the standard of review properly is
     characterized as whether 'some evidence' supports the conclusion that the inmate
24   is unsuitable for parole because he or she currently is dangerous." (*In re
     Lawrence*, *supra*, 44 Cal.4th at 1191.)

25
             Here, the petitioner was convicted of first-degree murder for the 1987
26   killing of Timothy Kachuck and sentenced to 25 years to life.  He has now served
     21 years, and the Board of Parole Hearings has denied his parole twice.  The most
27   recent denial was for two years.  While the Board relied primarily on the
     seriousness of the commitment offense, it also noted that petitioner has had some
28   disciplinary problems while incarcerated, including a fairly recent serious

8

1   disciplinary violation for over-familiarization with staff.  (See Board Transcript, p.
    108.)  He has also had past disciplinary problems, including one for battery.
2   (*Ibid*.)  Thus, the Board believed that, despite the fact that petitioner has made
    considerable gains since his incarceration, he had taken a step backward in his
3   programming and had committed an error in judgment when he committed the
    disciplinary violation.  (*Id*. at p. 113.)
4
            The record supports the Board's conclusion, since petitioner freely
5   admitted that he committed a disciplinary violation in 2006, and he also admitted
    that he had "made a mistake" and that he had let people who supported him down.
6   (Board Transcript, pp. 29.)  The record reveals that petitioner has had several
    other serious disciplinary violations, including one for battery in 1993.  (*Id*. at p.
7   63.)  In addition, petitioner had a less serious violation in 2006 for refusing to stop
    group exercise when ordered to do so.  (*Id*. at p. 64, see also Exhibit A, Life
8   Prisoner Evaluation Report, p. 6.)  Therefore, there is at least some evidence
    indicating that the petition[er] may have trouble following the rules of society,
9   which supports the Board's conclusion that he would still pose a danger to society
    if released.  Thus, this court cannot overturn the Board's decision.
10

11  (Ex. 2, to Answer.)

12          There is no showing that the state court's determination was unreasonable.  The superior

13  court cited sufficient evidence to support the Board's 2008 determination that Petitioner remains

14  an unreasonable risk to public safety if released.

15          The heinous circumstances of the commitment offense demonstrated a callous disregard

16  for human suffering supports the Board's finding of unsuitability.  Petitioner and his crime

17  partners attacked the victim in his own home.  After slapping the victim, Petitioner continue to

18  wrestle with him causing him to fall to the ground.  The victim's hands were duct taped behind

19  his back, and his legs, knees, and waist were also taped.  The victim's mouth and nose were duct

20  taped so tightly it cut off his air-flow, which resulted in the victim suffocating.  The Board

21  determined that the motive for the crime was very trivial. Cal. Code Regs., tit. 15, §

22  2402(c)(1)(E).  In support, the Board stated that the motive was an out-standing drug debt for

23  $30.  The evidence supports this finding.  The victim was a personal friend of Petitioner making

24  his particularly vulnerable and yet he showed no compassion while he let the victim suffocate,

25  and fled the state thereafter.  These circumstances certainly demonstrate a callous disregard for

26  human suffering.

27          The state court also noted that Petitioner received four serious rules violations, including

28  one for violent behavior.  The most recent violation was for over-familiarity with staff, which

                                                9

1 | caused concern because of Petitioner's inability to follow the rules and creates a serious safety

2 | issue.  Petitioner also received a serious rules violation for battery.  The court concluded that

3 | Petitioner's inability to follow rules and his decision to commit violations despite the serious

4 | ramifications supported the Board's finding of current dangerousness.  The state court's decision

5 | was reasonable.

6 |       The psychological report was not supportive of release.  The most recent psychologist

7 | found Petitioner to be a low moderate to moderate risk for future violence.  See e.g. Hayward,

8 | 603 F.3d at 563 (psychologist's evaluation that prisoner posed a "low to moderate" risk of future

9 | violence, coupled with evidence that offense was particularly aggravated, is sufficient evidence

10 | to demonstrate future dangerousness to support denial of parole.)  The Board also expressed

11 | concern that the prior psychological evaluation in 2003 found Petitioner to be in partial remission

12 | for drug use.  Yet, the most recent psychological evaluation in 2007 did not address this finding.

13 | This factor was properly considered.

14 |       The Board also considered the factors in support of suitability, but found those factors did

15 | not outweigh the factors of unsuitability, and the state court's determination that some evidence

16 | supports the Board's decision was not an unreasonable application of the some evidence

17 | standard, nor was it an unreasonable determination of the facts in light of the evidence presented.

18 | 28 U.S.C. § 2254.

19 | RECOMMENDATION

20 |       Based on the foregoing, it is HEREBY RECOMMENDED that:

21 |     1.     The instant petition for writ of habeas corpus be DENIED; and

22 |     2.     The Clerk of Court be directed to enter judgment in favor of Respondent.

23 |       This Findings and Recommendation is submitted to the assigned United States District

24 | Court Judge, pursuant to the provisions of 28 U.S.C. section 636 (b)(1)(B) and Rule 304 of the

25 | Local Rules of Practice for the United States District Court, Eastern District of California.

26 | Within thirty (30) days after being served with a copy, any party may file written objections with

27 | the court and serve a copy on all parties.  Such a document should be captioned "Objections to

28 | Magistrate Judge's Findings and Recommendation."  Replies to the objections shall be served

10

1   and filed within fourteen (14) days after service of the objections.  The Court will then review the

2   Magistrate Judge's ruling pursuant to 28 U.S.C. § 636 (b)(1)(C).  The parties are advised that

3   ///

4   failure to file objections within the specified time may waive the right to appeal the District

5   Court's order.  Martinez v. Ylst, 951 F.2d 1153 (9th Cir. 1991).

6

7            IT IS SO ORDERED.

8   **Dated:    November 10, 2010**                    **/s/ Sandra M. Snyder**
                                          UNITED STATES MAGISTRATE JUDGE
9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28